UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
JC, LC, and TC, an Infant, appearing by her
Parents and Legal Guardians, JC and LC,[1]

                     Plaintiffs,

           -against-

MARK COUNTRY DAY SCHOOL, SUFFOLK
COUNTY, SUFFOLK COUNTY POLICE
DEPARTMENT, DETECTIVE BRUCE CROCE,
JANICE FINKELSTEIN, and JILL COONELLY,

                     Defendants.
----------------------------------------------------------------x

**MEMORANDUM & ORDER**

03-CV-1414 (DLI)(WDW)

**DORA L. IRIZARRY, U.S. District Judge:**

Plaintiffs, JC and LC, bring this action on behalf of their infant daughter, plaintiff TC, pursuant to 42 U.S.C. § 1983, alleging that defendants violated plaintiffs' due process and equal protection rights in interviewing TC without first notifying JC and LC. Plaintiffs further assert negligence and other analogous state law claims against Defendant, Mark Country Day School (the "Day School"); the Day School director, Janice Finkelstein; and a Day School teacher, Jill Coonelly (collectively the "School Defendants"). All defendants moved for summary judgment pursuant to Fed. R. Civ. P. 56. By order dated April 6, 2006, this Court referred the motions for summary judgment to U.S. Magistrate Judge William D. Wall ("Judge Wall"or "Magistrate Judge") who issued a Report and Recommendation ("R&R") dated July 13, 2006 recommending dismissal of this action.[2] After a *de novo* review of those portions of the R&R to which Plaintiffs object, *see* Fed. R. Civ. P. 72 (b); 28 U.S.C. § 636(b), this Court modifies the R&R to the extent that the Court finds

---

     [1]     Due to the sensitive and personal nature of the underlying facts, only the plaintiffs' initials will be used in the caption

     [2]     Familiarity with Magistrate Judge Wall's R&R is assumed.

no state action on the part of Coonelly in reporting TC's conduct to Child Protective Services ("CPS") and adopts Judge Wall's remaining findings and recommendation of dismissal. In addition, due to the sensitive and personal nature of the underlying facts, only the Plaintiffs' initials shall be used in the caption. Furthermore, with the exception of this Memorandum and Order, this action shall be sealed.

The largely uncontested relevant facts were discussed at length in Magistrate Judge Wall's R&R and will be amplified in the Court's discussion only to the extent necessary.

## **DISCUSSION**

A court may adopt those portions of a report and recommendation to which the parties do not object and with which the court finds no clear error. *See* Fed. R. Civ. P. 72(b)*; see also Grassia v. Scully*, 892 F.2d 16, 19 (2d Cir. 1989). However, the district court applies a *de novo* standard of review to those parts of the report to which any party objects. *See* Fed. R. Civ. P. 72(b). Although the School Defendants submit that the Court should apply a clearly erroneous standard in reviewing Judge Wall's R&R because plaintiffs failed to submit "proper objections," *see* Reply to Objections at 1, plaintiffs, albeit minimally, adequately point to specific sections of Judge Wall's R&R to which they object. Accordingly, the Court reviews the R&R under a *de novo* standard. *See United States v. Tortora*, 30 F.3d 334, 338 (2d Cir. 1994). The Court considers such objections and may accept, reject, or modify the recommended decision. *See* Fed. R. Civ. P. 72(b).

Plaintiffs make the following four objections to the Magistrate Judge's R&R: (1) the Magistrate Judge erred in limiting its state action finding to Coonelly's report of the May 9, 2002 incident of alleged child abuse to CPS; (2) the Magistrate Judge failed to properly apply the summary judgment standard to plaintiffs' due process and equal protection claims; (3) the

Magistrate Judge erred in finding no material facts were in dispute as to whether the School Defendants acted in bad faith, with malice or negligence in the reporting of plaintiffs to CPS; and (4) the Magistrate Judge erred in finding qualified immunity where the underlying material issues relating to intent, racial animus or motive were in dispute. *See* Objections at 2.

## I. State Action

Plaintiffs contend that Judge Wall "erroneously limited the scope [of his finding of state] action to Coonelly's call to CPS." *See* Objections at 3. Specifically, plaintiffs contend that Finkelstein and the Day School were also state actors because Finkelstein conducted "investigatory" questioning of TC, "agreed with and approved Coonelly's actions of reporting the incident to CPS," and was involved in the CPS investigation, when she insisted that the senior caseworker McCray question TC. *See* Objections at 4. The Court disagrees with plaintiffs and further disagrees with the magistrate judge to the extent that he concluded that any of the School Defendants were state actors under the facts and circumstances of this case.

To establish a claim under § 1983, plaintiffs must demonstrate "(1) that the conduct complained of was committed by a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Dwyer v. Regan*, 777 F.2d 825, 828 (2d Cir. 1985). Traditionally, privately owned schools, which have be likened to other private corporations, such as nursing homes and hospitals, are not state actors. *See Rendell-Baker v. Kohn*, 457 U.S. 830, 840-43, 102 S. Ct. 2764, 73 L. Ed. 2d 418 (1983). However, in 2000, the Second Circuit held that where a traditionally private entity is acting as "reporting and enforcement machinery for [] a government agency charged with detection and prevention of child abuse and neglect," such an entity is a state actor. *See Kia v.*

*McIntyre*, 235 F.3d 749, 756-57 (2d Cir. 2000), *cert. denied*, *Kia P. ex rel. Mora P. v. New York City*, 534 U.S. 820, 122 S. Ct. 51, 151 L. Ed. 2d 21 (2001). In *Kia*, parents of a newborn baby filed a § 1983 action against a hospital for retaining the baby, who tested positive for methadone and exhibited methadone withdrawal symptoms, after releasing its mother. *Id.* at 751-53. A hospital social worker, a mandated reporter under state law, notified the local Child Welfare Administration ("CWA"), who began an investigation. *Id*. at 753. Approximately one week later, the hospital received negative test results from a second methadone test and the newborn was medically cleared for release. *Id.* However, the hospital did not release the baby until a few days later, when CWA informed the hospital that CWA was not going to seek custody of the newborn. *Id.* The Second Circuit found that retaining the baby for the first week for medical reasons did not render the hospital a state actor. *Id.* at 756-57. However, once the newborn received medical clearance and was not released, the hospital was acting as both a "*reporting and enforcement machinery* [emphasis added] for CWA" and was thus a state actor subject to § 1983 liability. *Id*.

In applying *Kia*, the Magistrate Judge found that the School Defendants' "actions in regard to the report to CPS, a report mandated by state law, constituted state action." R&R at 18. The Magistrate Judge did not reach the question of whether Finkelstein or the Day School acted under color of state law because he recommended that plaintiffs' § 1983 action be dismissed for other reasons. *Id.* The Court disagrees with the Magistrate Judge's finding that Coonelly was a state actor subject to § 1983 liability. The Second Circuit's holding in *Kia*, turns on the pivotal fact that the hospital retained the newborn even after the newborn received medical clearance for release. *Kia*, 235 F.3d at 756-57. Once the hospital medically cleared the baby for release and continued to retain the baby, the hospital became both a "reporting *and* [emphasis added] enforcement machinery" for

CWA, and thus, a state actor liable under § 1983. *Id.* at 757.

Here, Coonelly did nothing more than report the incident to CPS. There is no evidence that TC was removed from school or held from her parents by Coonelly, Finkelstein, or any other School employee. In order to constitute state actors, the School Defendants must have served as both a reporting and enforcement mechanism for CPS. *See Kia*, 235 F.3d at 757. Although Coonelly and arguably, the remaining School Defendants, took on a reporting role, they did not take on an enforcement role. Thus, Coonelly and the remaining School Defendants are not state actors and cannot be subject to § 1983 liability.

Moreover, courts have repeatedly found that reporting suspected child abuse alone does not constitute state action. *Mione v. McGrath*, 435 F. Supp. 2d 266, 272 (S.D.N.Y. 2006) (finding that hotel employees did not act under color of state law when they contacted state child welfare authorities to report suspected child abuse by a hotel guest); *Storck v. Suffolk County Dep't of Soc. Servs.*, 62 F. Supp. 2d 927, 941 (E.D.N.Y. 1999) (finding physicians who reported their suspicions of child abuse pursuant to state statute did not render such doctors state actors); *Deckon v. Chidebere*, No. 93 Civ. 7965, 1995 WL 555684, at * 3-4 (S.D.N.Y. Sept. 19, 1995) (finding no state action where hospital reported suspected child abuse to government agency when newborn baby tested positive for cocaine and retained the baby because she did not meet minimum weight requirements for discharge); *Thomas v. Beth Israel Hosp.*, 710 F. Supp. 935 (S.D.N.Y. 1989) (finding no state action where hospital reported suspected child abuse pursuant to NYS Child Protective Services Act). Courts have also found that a private person does not become involved in joint action with a law enforcement agency simply by furnishing information to officers or the agency. *See Johns v. Home Depot U.S.A., Inc.*, 221 F.R.D. 400, 404 (S.D.N.Y. 2004) (private party

who calls for police assistance is not rendered a state actor under § 1983 even if the call caused plaintiff's detainment); *see also Gallo Loecks ex rel. T.L. v. Reynolds*, 34 Fed. Appx. 644, 650 (10th Cir. 2002); *Lockhead v. Weinstein*, 24 Fed. Appx. 805, 806 (9th Cir. 2001).

Plaintiffs also contend that Finkelstein and the Day School constitute state actors because Finkelstein conducted "investigat[ive]" questioning of TC and that Finkelstein "agreed with and approved Coonelly's actions of reporting the incident to CPS." Objections at 4. However, Finkelstein's questioning of TC took place prior to Coonelly's report to CPS and was not on behalf of CPS. Moreover, no School Defendant was present during any CPS or County official interview of TC. *See* McCray Dep. at 30-31.

Plaintiffs further contend that Finkelstein insisted a CPS senior case worker question TC a second time, thereby furthering CPS' investigation. *See* Objections at 4 (citing McCray Dep. at 36-37). However, the case worker testified that, upon questioning TC a second time, the case worker herself wanted to clarify a situation that "happened with another child." *Id.* When the case worker was asked who she met with before questioning TC a second time, she responded, "I don't recall." *Id.* No reasonable inference can be drawn that Finkelstein insisted the case worker question TC a second time, let alone that the case worker met with Finkelstein before the case worker questioned TC a second time. Thus, Finkelstein's actions cannot be considered an enforcement role on behalf of CPS. Accordingly, the Court finds that the School Defendants were not state actors within the meaning of § 1983 and defendant's summary judgment motion is granted on this ground.

## II. **Due process and Equal Protection Claims**.

The Court need not reach the question of whether the School Defendants violated plaintiffs' constitutional rights because the Court finds no state action on the part of the School Defendants.

However, in light of the Magistrate Judge's recommendations and plaintiffs' objections thereto, on a *de novo* review, the Court finds that, even if plaintiffs established state action on the part of the School Defendants, the plaintiffs' claims are without merit.

**A.     Due Process**

Plaintiffs contend that the Magistrate Judge, in evaluating plaintiffs' substantive due process claim, failed to consider "genuine issues of fact as to whether the [S]chool [D]efendants' actions were reasonable or arbitrary." Objections at 7. Specifically, plaintiffs contend that the Magistrate Judge did not consider that Finkelstein had no basis for identifying TC's behavior as age inappropriate and that Finkelstein acted arbitrarily when she vacillated between opinions on whether that TC's behavior was age inappropriate. *See* Objections at 8.

"Substantive due process rights guard against government's exercise of power without any reasonable justification in the service of a legitimate governmental objective." *Tenenbaum v. Williams*, 193 F.3d 581, 600 (2d Cir. 1999) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998)). "Parents [] have a constitutionally protected liberty interest in the care, custody and management of their children." *Id.* at 593. This liberty interest is protected by both the substantive and procedural safeguards of the Due Process Clause of the Fourteenth Amendment. *See Kia P.*, 235 F.3d at 758-59. While "the Supreme Court has recognized an abstract fundamental liberty interest in family integrity," it "is counter-balanced by the compelling governmental interest in the protection of minor children, particularly in circumstances where their protection is considered necessary as against the parents themselves." *See Friedman v. New York City Admin. For Children Servs.*, No. 04-cv-3077, 2005 WL 2436219, at * 5 (E.D.N.Y. Sept. 30, 2005) (internal citations and quotation marks omitted"). Thus, the liberty interest is "not absolute or unqualified" and does not

include the "right to be free from child abuse investigations." *See id*.

As Judge Wall pointed out, the law on the issue of custody refers to physical custody of the child. *See Nicholson v. Scoppetta*, 344 F.3d 154, 172 (2d Cir. 2003) ("[B]rief removals generally do not rise to the level of a substantive due process violation, at least where the purpose of the removal is to keep the child safe during investigation and court confirmation of the basis for removal.") (citing *Tenenbaum*, 193 F.3d at 100-01, n. 12)); *Shapiro v. Kronfeld*, No. 00 Civ. 6286, 2003 WL 2698889, at *16 (S.D.N.Y. Nov. 24, 2004) ("A plaintiff seeking to prevail on a claim must establish that the separation from her children was so shocking, arbitrary, and egregious that the Due Process clause would not countenance it even were it accompanied by full procedural protection.") (quoting *Anthony v. City of New York*, 339 F.3d 129, 143 (2d Cir. 2003) (internal quotation marks omitted)); *Durven v. Giuliani*, No. 98 Civ. 0523, 2000 WL 1145425, * 7 (S.D.N.Y. Aug. 11, 2000) (finding no evidence of any constitutional violation where ACS never "removed the children from school, from their home, or from the care of their father or conducted any physical examination of the children."); *cf. Friedman*, 2005 WL 2436219, at * 5 (denying motion to dismiss § 1983 claim where malicious reports of abuse to ACS caused plaintiff's child visitation to be decreased from weekends, Jewish holidays and evenings to two hours a week).

Here, as the Magistrate Judge found, plaintiffs were not deprived of physical custody of TC. Like in *Durven*, neither the School Defendants, nor CPS ever removed TC from school, her home, or the care of her parents or conducted any physical examination of TC. *See id.* Plaintiffs contend that the Magistrate Judge did not resolve all ambiguities in the plaintiffs' favor and a genuine issue of fact exists as to whether the School Defendants' actions were reasonable or arbitrary. Plaintiffs point to conflicting testimony among witnesses, including Finkelstein's vacillation between opinions on whether TC's behavior was age inappropriate, the tone or way Finkelstein and Coonelly

communicated with TC, and the lack of training or experience in identifying child abuse. However, plaintiffs' focus on the allegedly conflicting testimony and Finkelstein's alleged vacillation is misplaced. In fact, it is uncontested that TC was not removed from her school, home or care of her parents. It is further uncontested that TC was never physically examined by the School Defendants, CPS, or anyone under the direction of the School Defendants or CPS. Moreover, the Social Services Law does not provide that the reporter be trained or experienced in identifying suspected child abuse. The Social Services Law merely designates certain persons and/or officials who must report suspected child abuse or maltreatment. *See* N.Y. Soc. Servs. Law § 413. Thus, there is no evidence of any due process violation by either the School Defendants or CPS.[3]

### B. Equal Protection

Plaintiffs contend that the Magistrate Judge erred in concluding that there was no evidence of white children who exhibited behaviors comparable to TC's reported behaviors but who were not reported to CPS. Plaintiffs allege that their equal protection claim is based on disparate treatment and selective enforcement and submit a laundry list of testimony in an attempt to support this contention. *See* Objections at 15-18. However, plaintiffs fail to show that a genuine issue of fact exists as to whether TC was treated differently from "similarly situated" children at the School and that the School Defendants harbored "racial animus" towards TC. *See Cobb v. Pozzi*, 363 F.3d 89, 110 (2d Cir. 2004). Plaintiffs must point to specific material issues of facts showing both the "similarly situated" and "racial animus" prongs. *See id.* (quoting *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001)).

---

[3] Plaintiffs' objections do not address plaintiffs' constitutional claims against the County Defendants; thus, no *de novo* review is necessary. Upon due consideration, the Court adopts Judge Wall's R&R concerning plaintiffs' claims against the County Defendants in its entirety.

Here, plaintiffs contend that Coonelly did not maintain similar "log books" or report to CPS similar actions by white children in class. *See* Objection at 14. The record does not support the claim that Coonelly maintained a log of TC's conduct and reported TC to CPS because she was African American. It is uncontested that Coonelly did not maintain as extensive a "log" of other children's conduct as she did with TC, that TC was the only African American female in the class, and that other children were not reported to CPS. However, other children did not exhibit the same kind of behavior and did not exhibit a similar extent or frequency of similar behaviors. *See* Coonelly Dep. at 39 et. seq. The factors submitted by plaintiffs, alone, do not support the conclusion that other children's behavior were comparable to TC's such that a reasonable jury could infer both that the other children were similarly situated and that Coonelly's maintenance of the log and report to CPS were racial motivated.

Plaintiffs further contend that Skoller acted in bad faith when "Skoller called Coonelly at home to advise her of the situation because she knew that Coonelly was watching [TC] and was uncomfortable with [TC]." Objections at 15. More accurately, Coonelly testified that Skoller knew that Coonelly "was concerned with [TC]" and not "watching [TC]." Coonelly Dep. at 88. Plaintiffs also indicate that Skoller gave conflicting versions of what transpired on May 9, 2002, "never mentioning to Coonelly or Finkelstein that [TC] had purportedly made any statement about her daddy touching her, although Skoller testified to that effect at her deposition." Contrary to plaintiffs' contention, Coonelly testified that she did not recall whether Skoller asked TC how it felt when someone touched her. *See* Coonelly Dep. at 89. Moreover, Coonelly did not indicate whether someone referred to TC's father or another specific individual. It is also irrelevant, pursuant to the NY Social Services Law, who the suspected abuser is. Coonelly, as a teacher, was a mandated reporter and was required to report suspected child abuse irrespective of the alleged abuser's

identity. Nonetheless, any alleged conflicting testimony between Skoller and Coonelly does not lead to the conclusion that the School Defendants acted with racial animus. *See Berk v. St. Vincent's Hosp. and Med. Ctr.*, 380 F. Supp. 2d 334, 364 (S.D.N.Y. 2005) ("the mere presence of contradictory testimony does not establish the existence of a genuine issue for trial where the conflicting testimony, even if credited by the Court, would nonetheless fail to establish Defendants' liability.") A reasonable jury cannot infer that Coonelly's report to CPS was racially motivated from the fact that Skoller contacted Coonelly at home because Skoller was aware that Coonelly was "concerned with TC" or from the fact that Coonelly did not recall whether Skoller discussed someone touching TC. Thus, this Court adopts Judge Wall's recommendation and dismisses plaintiffs' equal protection claims against the School Defendants.

### III. <u>Bad Faith</u>

Plaintiffs, restating the basis of their motion, claim that "the [S]chool [D]efendants' actions of making false and misleading statement [sic] to CPS without reasonable cause and in bad faith removed them from the shield of protection of Section 419 of the New York Social Services Law." Objections at 21-22. "Mandated reporters need not await conclusive evidence of abuse or maltreatment but must act on their reasonable suspicions and the law allows them a degree of latitude to err on the side of protecting children who may be suffering from abuse." *Isabelle V. by Neyes V. v. City of New York*, 150 A.D.2d 312, 312, 541 N.Y.S.2d 809, 810 (1st Dep't 1989). As the Magistrate Judge accurately stated, "for mandatory reporters, good faith is presumed." *See* R&R at 26 (citing *Shapiro*, 2003 WL 2698889, at *14). Although a plaintiff may overcome such a presumption by demonstrating persuasive evidence of bad faith, plaintiffs have failed to establish bad faith on the part of the School Defendants. *See Lara v. City fo New York*,187 Misc.2d 882, 726 N.Y.S.2d 217 (N.Y. Sup. Ct. 2001).

Here, Coonelly testified that her decision to report TC's behavior to CPS was based on a number of factors and not one event, namely the information she learned from Skoller, her observations of TC in the classroom before the May 9, 2002 incident, information she learned about the May 9, 2002 incident, CPS' comment that such behavior was a "red flag", and CPS' advice to report. *See* Coonelly Dep. at 45-53, 76-82, 86-95, 106-09, 113-18, 122-24, 129-36. Thus, plaintiffs' contention that the reporting was not warranted because of the lack of conclusive proof does not rebut the statutory presumption of good faith. *See Preston v. New York*, 223 F. Supp. 2d 452, 472 (S.D.N.Y. 2002); *Isabelle V*, 150 A.D.2d at 312 (finding that officials reporting children exhibiting similar symptoms and fear of suspected abuser, despite inconclusive medical tests, acted reasonably.) As plaintiffs indicated, the issue is "not whether there is ultimately a finding of abuse or not," *see* Objection at 22, but rather whether plaintiffs have rebutted the presumption of good faith. The Court finds that plaintiffs have not done so and their claim fails on this ground.

## IV. **Qualified Immunity**

Plaintiffs' contend that the Magistrate Judge erred in finding qualified immunity where the underlying material issues relating to intent, racial animus or motive were in dispute. In support of this contention, plaintiffs, again, point to allegedly conflicting testimony among witnesses concerning what transpired before Coonelly's report to CPS. *See* Objections at 21.

Whether qualified immunity bars a suit against government officials turns on a two-part test: "(1) the court must first consider whether the facts alleged, when taken in the light most favorable to the party asserting the injury, demonstrate a violation of a constitutional right, and (2) the court must then consider whether the officials' actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Jones v. Parmley*, 465 F.3d 46, 55 (2d Cir. 2006) (citing *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666

(2002); *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001) (internal quotation marks omitted)).

Here, the Court finds that it was objectively reasonable for Connelly to believe that her report to CPS did not violate plaintiffs' constitutional rights. Plaintiffs' contention that varying versions of the May 9, 2002 incident from Finkelstein, Skoller and Coonelly, Connelly's conflicting testimony that raised credibility issues, and alleged inconsistent statements by Coonelly to CPS are insufficient to establish that the School Defendants did not objectively believe Coonelly was required to report TC's behavior. In fact, when Coonelly contacted CPS and recounted the events of May 9, 2002, CPS advised that TC's conduct was a "red flag" and that Coonelly, as a mandated reporter, was required to report such conduct. *See* Coonelly Dep. at 132. Thus, a reasonable jury cannot find that the School Defendants did not have an objective reason to report TC's behavior to CPS or that the School Defendants would have any reason to believe that by doing so they would be violating plaintiffs' constitutional rights.

## **CONCLUSION**

Based on the foregoing, this Court modifies the R&R to the extent that the Court finds no state action on the part of Coonelly in reporting TC's conduct to CPS. The Court otherwise adopts Judge Wall's remaining findings and petitioner's objections are overruled. Defendants' motion for summary judgment is granted and this matter is dismissed without costs to either party. In addition, due to the sensitive and personal nature of the underlying facts, the Clerk of the Court is directed to amend the caption to use only the Plaintiffs' initials. Furthermore, the Clerk of the Court is directed to seal the file maintained on this matter, with the exception of this Memorandum and Order.

SO ORDERED

DATED:    Brooklyn, New York
         January 23, 2007

_____/s/_____
DORA L. IRIZARRY
United States District Judge